IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-0462-N |
| | § | |
| DALLAS INDEPENDENT SCHOOL DISTRICT, | § § | |
| | § | |
| Defendant. | § | |

## **ORDER**

Before the Court is Defendant Dallas Independent School District's ("DISD" or "the District") Motion for Summary Judgment [13], filed on August 15, 2006. With respect to Williams's claims based on DISD's failure to hire him for the positions of Associate Superintendent and Training Director and on the denial of annual salary raises, the Court grants summary judgment because Williams has failed to establish a prima facie case of discrimination or retaliation. With respect to Williams's claims based on DISD's failure to hire him for the position of Executive Director, the Court grants summary judgment because Williams has failed to raise a fact issue as to whether DISD's proffered reason for not hiring him was pretext for discrimination. The Court grants summary judgment on the rest of Williams's claims because he failed to exhaust his administrative remedies.

## I. WILLIAMS'S EMPLOYMENT WITH DISD

In October 1993, DISD hired Williams, an African-American, as the Construction Director in the Facilities Bond Program Department, which oversaw construction efforts funded by the 1992 Bond Program. Williams performed well in this position and remained there until December 2001. At the conclusion of the 1992 Bond Program in December 2001, DISD reassigned Williams to the Building Improvement Division, where Williams currently works.

Williams alleges that throughout his thirteen years with DISD, the District discriminated against him because of his race and retaliated against him for making formal complaints of discrimination. Specifically, among other allegations, Williams alleges that DISD rejected his application for the position of Executive Director on four occasions, failed to interview him for the position of Associate Superintendent, Auxiliary Services, and did not give him annual salary raises from 2000 to 2003, and gave him only a 1% raise in 2004 when other similarly situated employees received a 3% raise.

### *A. DISD Does Not Select Williams for Executive Director*

In September 2002, DISD posted a vacancy for the position of Executive Director, Construction Services Department. Williams applied for the position, and DISD selected him as one of eleven applicants to interview. The interview panel consisted of Michael Brown, Associate Superintendent, Facilities Services Department; Jack Hill, Associate Superintendent, Construction Services Department; and, Larry Zerby, Executive Director of the Facilities Planning Department. During the interviews, the interviewers asked each

applicant the same set of questions, scoring each answer on a scale of 1 to 10. At the conclusion of the interviews, each interviewer totaled the candidate's scores on the eleven questions, and these totals were then averaged to arrive at the candidate's final interview score.

Following the first round of interviews, DISD selected three candidates as finalists, based on their interview scores and the interviewers' assessments of who best fit the position. These finalists included Ron Stever, Jim Brady, and Bob Williams. DISD did not select Williams for a second interview because he received the lowest interview score among the eleven interviewees. According to the interviewers, Williams displayed a negative attitude and poor judgment during the interview, choosing to spend his interview time complaining about management of the 1992 bond program. As a result of his interview, Hill, who made the final hiring recommendation with respect to the Executive Director position, determined that Williams would not be ideal for the position because he would be difficult to supervise and incapable of fostering team cohesiveness. Ultimately, Hill recommended Stever for the position due to his education, extensive experience, and excellent interview performance.[1]

DISD posted another vacancy for the position of Executive Director, Construction Services Department in April 2003 and again in October 2003. Williams applied for both positions, but due to his poor interview performance for the September 2002 opening, DISD declined to interview him on both occasions. Again, DISD conducted two rounds of

---

[1] Stever held a Bachelor of Science in Construction Management and a Master of Science in Vocational Education. Stever also had over twenty years of experience in construction, including a nine year stint as the Project Manager for the Jefferson County School District in Colorado, where he coordinated various construction projects.

ORDER – PAGE 3

interviews for each opening. Ultimately, DISD selected Dinesh Valia to fill the April 2003 opening due to his extensive experience working with the City of Dallas.[2] To fill the October 2003 vacancy, DISD chose Robert Palmer, who had a Bachelor of Science in Architecture and Civil Engineering and over thirty years of construction-related experience.

In November 2004, DISD posted a fourth vacancy for the position of Executive Director, Construction Services Department. Williams again applied for the position, and DISD selected him for an interview. The interview panel consisted of Michael Brown, Larry Zerby, and Robert Palmer. Although Hill selected Williams as a finalist this time, he ultimately recommended Larry Oliver for the position, due to his extensive construction- and management-related experience.[3] Hill did not recommend Williams for the position because he displayed the same negative attitude and poor judgment during the interview as he had in 2002. Williams again criticized the handling of the 1992 bond program, but failed to identify solutions or offer ways in which he could positively contribute to the then-ongoing 2002 program. Additionally, Oliver possessed financial experience, which Williams lacked, and which DISD felt would be a particular asset in the position.

---

[2] In addition to holding a Bachelor of Science degree in Civil Engineering, Valia had served the City of Dallas for over twenty years in various construction and engineering capacities. As a result, he was particularly familiar with the City's zoning and permit processes, as well as how to negotiate the City's bureaucracy.

[3] Oliver held a Bachelor of Science in Mathematics and a Master's degree in Education, as well as over fifteen years of experience in construction and financial management of bond programs.

### *B. DISD Does Not Select Williams for Associate Superintendent*

In August 2003, DISD posted a vacancy for the position of Associate Superintendent, Auxiliary Services. The necessary qualifications for the position included: (1) knowledge of budgeting gained through years of directly related experience; (2) knowledge of the educational process gained through years of directly related experience; (3) knowledge of legal requirements for school district operations, as well as familiarity with the Texas Education Code, Texas Administrative Code, and DISD Board of Trustee policies; and (4) knowledge of the impact that municipal, county, and other local political subdivisions may have on DISD operations.

Williams applied for the position by submitting his resume, along with a letter of interest. DISD, however, did not select him for an interview because Williams did not appear qualified for the position. According to DISD, Williams's resume did not reflect that he had any experience with or knowledge of the budgeting process, the educational process, or the legal requirements for school district operations. DISD ultimately hired George Sparks, an African-American, to fill the position.

### *C. DISD's Denial of Annual Salary Increases*

During the 2001/2002 school year, Williams received a salary raise from $76,999.00 to $79,309.00 per year. During that same school year, DISD reassigned Williams to the position of Project Director in the Building Improvement Department as a result of the closure of the entire Construction Services Department at the end of the 1992 bond program. DISD then sent Williams a letter in February 2002, advising him that his salary as the

Construction Director would be frozen at pay grade level 06G. The letter informed Williams that any assignment he accepted in the future must exceed his highest former pay grade status in order for him to be eligible for the standard 5% promotional salary increase.

For the 2002/2003 school year, Williams's salary remained frozen as provided in the February 2002 letter.

DISD implemented a new salary structure during the 2003/2004 school year. The new salary structure designated Williams's position as salary grade 5, which has a salary range of $40,1000.0 to $72,500.00 per year. Because Williams's annual salary of $79,309.00 exceeded the maximum salary for his position, Williams was ineligible to receive a salary raise in December 2003.

For the 2004/2005 school year, DISD gave Williams a 1% salary raise, increasing his salary from $79,309.00 to $80,102.00 per year even though Williams remained ineligible for the standard promotional salary increase. According to Williams, other similarly situated employees received a 3% salary increase.

### D. Williams's Additional Allegations

In addition to his allegations related to his nonselection for the Executive Director and Associate Superintendent positions and the denial of annual salary raises, Williams also highlights several other allegedly discriminatory and retaliatory actions by DISD. These allegations include: (1) paying Williams less than similarly situated employees, which he learned in November 2001; (2) from 1995 to 2001, preventing Williams from performing his job duties as Construction Director, including giving his work assignments to other

employees, excluding him from departmental meetings, and withholding departmental communications; (3) in 2000, failing to promote Williams to the newly created position of Executive Director, Construction Services Department; (4) in 2000, demoting Williams from second to third in charge of the Facilities Bond Program Department; (5) in January 2002, demoting Williams from the position of Construction Director to the position of Project Director in the Building Improvement Division and assigning him only menial duties thereafter; (6) in February 2002, failing to select Williams for the position of Special Assistant, Construction Services Department; (7) in February and March 2002, removing Williams from the DISD Minority/Women Business Enterprise Advisory Committee and the DISD Safety and Security Council; (8) in April 2002, attempting to force Williams to change his contract status from three-year to one-year; (9) in May 2002, failing to select Williams for the position of Operations Executive, Office of the Superintendent; (10) in May 2002, requiring that Williams withdraw his grievance and waive all related legal rights in exchange for an annual raise; (11) in the fall of 2003, failing to select Williams for the position of Training Director, Construction Services Department; (12) in 2004–2005, failing to select Williams for the position of Assistant Superintendent, Facilities Services Department; and (13) in 2005, failing to select Williams for the position of Division Executive, Facilities Services Department.

In response to DISD's alleged discriminatory acts, Williams filed multiple internal grievances with DISD and two Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC dismissed both charges and issued

Williams right-to-sue letters on December 13, 2004 and July 11, 2005, respectively. Following receipt of the first right-to-sue letter, Williams commenced this action, asserting claims of race discrimination and retaliation with respect to each of the aforementioned actions. DISD has moved for summary judgment on all claims.

## II. SUMMARY JUDGMENT STANDARD & WILLIAMS'S BURDEN OF PROOF UNDER TITLE VII

Federal Rule 56(c) states that the party moving for summary judgment has the burden of showing that there is no genuine issue of fact and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Harbor Ins. Co. v. Trammel Crow Co.*, 854 F.2d 94, 98 (5th Cir. 1988). In the summary judgment context the Court is to accept the nonmovant's evidence and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Additionally, the Court must follow the burden-shifting analysis presented in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which applies to Title VII race discrimination and retaliation claims where, as here, the plaintiff provides only circumstantial evidence to support his claims. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993); *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001). Under this

analysis, Williams must first establish a prima facie case, which gives rise to the presumption that the employer acted with discriminatory or retaliatory intent. *See St. Mary's Honor Ctr.*, 509 U.S. at 506-07. DISD may then rebut this presumption by providing a legitimate nondiscriminatory, nonretaliatory reason for the underlying employment action. *Id.* Once DISD produces such a legitimate rationale, the presumption raised by the prima facie case disappears completely, and the only relevant question is whether DISD intentionally discriminated or retaliated against Williams. *Id.* at 510–11. At this point, the burden again rests with Williams to produce sufficient evidence to create a genuine issue of fact that either: (1) DISD's proffered reason for its employment action is not true, but is instead a pretext for discrimination or retaliation, or (2) DISD's reason, though true, is only one of the reasons for its conduct and that another "motivating factor" was Williams's race. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

### III. DISD IS ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS

#### *A. Williams Failed to Exhaust Administrative Remedies with Respect to Most Claims*

DISD maintains that, with respect to the majority of Williams's claims for discrimination and retaliation, Williams failed to exhaust his administrative remedies and, therefore, cannot pursue those claims in federal court. The Court agrees.

As a precondition to filing suit in federal court, Title VII requires an employee claiming discrimination or retaliation to exhaust his administrative remedies. *Taylor v. Books a Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). "Exhaustion occurs when the

employee files a timely charge with the EEOC and receives a statutory notice of right to sue." *Id.* at 379. To file a timely EEOC charge, the employee must file the charge no later than 300 days[4] after the alleged unlawful action occurred. 42 U.S.C § 2000e-5(e); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). Only those discrete discriminatory acts that took place within the statutory time period are actionable. *Morgan*, 536 U.S. at 114. Thus, absent an applicable defense, failure to file within the statutory period operates as a bar to the employee's claims. *Abrams v. Baylor Coll. of Med.*, 805 F.2d 528 (5th Cir. 1986).

Although Williams filed two Charges of Discrimination with the EEOC, these charges do not constitute timely charges with respect to the majority of Williams's claims. Williams's first charge, filed on April 13, 2004, cites multiple acts of discrimination and retaliation that allegedly occurred between 1995 and December 2003. Likewise, in his second charge of discrimination, filed on March 7, 2005, Williams complains of multiple acts of discrimination and retaliation that allegedly occurred between March 2002 and December 2004. However, the only alleged acts that he properly pursued with the EEOC – and which he can now pursue in federal court – are those acts cited in either charge that occurred within 300 days prior to the filing of the charges (i.e., on or after June 18, 2003 and on or after May 11, 2004). Acts that occurred outside the statutory time frame – before June 18, 2003 or between April 13, 2004 and May 11, 2004 – are not actionable. Furthermore, those alleged

---

[4] Under section 2000e-5(e) an aggrieved employee must generally file an EEOC charge within 180 days of the alleged unlawful employment practice. However, employees who have first filed a grievance with a "[s]tate or local agency with authority to grant or seek relief from [an illegal employment] practice" have up to 300 days to file a charge. Both parties treat the 300-day time frame as the relevant one, perhaps because Williams filed internal grievances with DISD. Consistent with the parties' treatment, the Court will apply the 300-day limit.

acts that occurred within the statutory time frame, but which Williams failed to identify in either EEOC charge or which could reasonably be expected to be within the scope of the EEOC investigation, are also barred.[5] *Fine v. GAF Chem. Corp.*, 995 F.2d. 576, 578 (5th Cir. 1993); *see also Terrell v. U.S. Pipe & Foundry Co.*, 644 F.2d 1112, 1123 (5th Cir. Unit B 1981) (explaining that a "Title VII suit [may] extend as far as, but no further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge"). Therefore, in this Court, Williams may only properly pursue discrimination and retaliation claims based on the following alleged actions: (1) failure to select Williams for the position of Training Director, Construction Services Department; (2) failure to select Williams for the position of Associate Superintendent, Auxiliary Services; (3) failure to select Williams for the position of Executive Director, Construction Services Department in October 2003 and December 2004; and (4) denying Williams an annual raise in December 2003.

### B. Williams Fails to Establish a Prima Facie Case of Discrimination or Retaliation Regarding his Nonselection for Training Director and for Associate Superintendent

To establish a prima facie case of Title VII race discrimination based on DISD's failure to hire Williams for a particular position, Williams must show that: (1) he belongs to a protected class; (2) he applied and was qualified for a job for which DISD was seeking

---

[5] This includes DISD's alleged failure to select William's for the positions of Assistant Superintendent and Division Executive in the Facilities Services Department, as well as limiting Williams to a 1% salary increase in 2004.

applicants; (3) DISD rejected him despite his qualifications; and (4) DISD filled the position with someone outside the protected class. *Young v. Houston*, 906 F.2d 177, 180 (5th Cir. 1990). Williams may establish a prima facie case of retaliation under Title VII by showing that: (1) he engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse employment action. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000); *see also Peace v, Harvey*, 2006 WL 3068677, at *1 (5th Cir. Oct 26, 2006) (noting that the Supreme Court's decision in *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405 (2006), relaxed the standard for "adverse employment action," but did not alter the elements of a prima facie case of retaliation). Although the plaintiff bears only a minimal burden in establishing a prima facie case, he must at least raise a genuine issue of material fact as to each element in order to survive summary judgment. *Johnson v. Louisiana*, 351 F.3d 616, 620 (5th Cir. 2003).

  Williams claims that DISD engaged in racial discrimination and retaliation when it did not select him for the position of Training Director, Construction Services Department. To survive summary judgment on his discrimination claim, Williams must, at a minimum, raise a fact issue as to whether he applied for and was qualified for the position. Likewise, to survive summary judgment on his retaliation claim, Williams must raise a fact issue as to whether a causal link exists between his protected activity and DISD's failure to select him for the position. Williams, however, has failed to meet this burden. He has produced no evidence that he actually applied for or was qualified for the position, and he has not offered

any evidence supporting the existence of a causal link. Thus, DISD is entitled to summary judgment on this claim.

Williams's claims based on DISD's rejection of his application for Associate Superintendent, Auxiliary Services also fail because Williams has not shown that he possessed the necessary qualifications for the position. The record reflects that the Associate Superintendent position required knowledge of and experience with budgeting, the educational process, and the legal requirements for school district operations. Williams's resume does not reflect such knowledge and experience, nor has he offered any additional evidence to suggest that he did have these qualifications. Furthermore, Williams has not supplied any evidence suggesting a causal link between DISD's rejection of his application for the Associate Superintendent position and his protected activity. Thus, Williams has failed to establish a prima facie case of discrimination or retaliation with respect to DISD's failure to select him for the Associate Superintendent position.

### C. Williams Fails to Establish a Prima Facie Case of Discrimination or Retaliation Regarding DISD's Denial of the 2003 Salary Increase

To establish a prima facie case of Title VII race discrimination related to DISD's denial of the 2003 annual salary increase, Williams must show that: (1) he is a member of a protected minority; (2) he was qualified for the salary increase; (3) DISD denied Williams the salary increase; and (4) similarly situated employees outside the protected class received the salary increase. *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 399 (5th Cir.

2000); *McMillan v. S.C. Dep't of Corrs.*, 16 F. Supp. 2d 635, 640 (D.S.C. 1997). The elements of a retaliation claim remain the same as articulated above.

Williams's claim that DISD denied him an annual salary raise in 2003 because of his race fails because Williams has not shown that he was qualified to receive the raise. Moreover, the record reflects that Williams was, in fact, not qualified to receive the 2003 salary raise because his salary was frozen until it no longer exceeded the salary range for the pay grade applicable to his position. Williams has not offered any evidence to the contrary, nor has he offered any evidence to support his assertion that the denial of the salary raise was directly linked to his protected activity. Accordingly, Williams has failed to establish a prima facie case of discrimination or retaliation with respect to DISD's denial of the 2003 salary raise.

### *D. Williams Fails to Raise a Fact Issue on Pretext Regarding his Rejection for Executive Director*

Assuming that Williams has established a prima facie case of discrimination and retaliation with respect to his rejection for the position of Executive Director in October 2003 and December 2004, DISD must rebut the presumption of discrimination by proffering a legitimate nondiscriminatory reason for not selecting Williams for the position. DISD has done so, arguing that it did not select Williams due to his poor interview performance. In response, Williams advances several unavailing arguments attempting to show pretext in hopes of preventing summary judgment.

Williams first argues that DISD has not met its burden of production under *McDonnell Douglas* because it has not proffered a legitimate nondiscriminatory rationale through competent summary judgment evidence. In support of its motion for summary judgment, DISD has offered affidavits of several DISD employees who had direct involvement in interviewing applicants and in the final hiring decision. Williams asserts that the Supreme Court's holding in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), forecloses DISD from relying on these affidavits because, according to Williams, *Reeves* requires the Court to disregard as interested witness testimony all testimony by DISD employees. The Fifth Circuit, however, has unequivocally rejected this interpretation of *Reeves*. *See Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 898 (5th Cir. 2002). Furthermore, in addition to the affidavits in support of its motion for summary judgment, DISD also offered as summary judgment evidence authenticated copies of the interview score sheets that substantiate the fact that Williams received the lowest interview score on the two occasions in which DISD interviewed him for the Executive Director positions.

Williams also asserts that his poor interview performance does not constitute a legitimate, nondiscriminatory reason for DISD's rejection of his application for the Executive Director positions because it is not sufficiently specific to allow Williams to rebut it. The Fifth Circuit, however, has previously upheld grants of summary judgment based on a district court's finding that the employer's reliance on a low interview score to deny an employee a position qualifies as a legitimate, nondiscriminatory reason for the decision. *See, e.g.*, *Jenkins v. Ball Corp.*, 140 Fed. Appx. 519, 525, 2005 WL 1515486, at *5 (5th Cir. June 28,

2005); *Solarzano v. Shell Chem. Co.*, 2001 WL 564154, at *6 (5th Cir. May 18, 2001). Here, DISD maintains that it did not select Williams for the Executive Director position because his interview scores, combined with the interviewers personal assessments of his personality and demeanor, indicated that Williams was not the best applicant for the position. The Court finds this explanation sufficiently establishes a legitimate, nondiscriminatory reason for the adverse employment actions.[6] Thus, to survive summary judgment, Williams must provide probative evidence that DISD's proffered reason for not selecting him is either pretext for discrimination or that, even if true, another motivation for not selecting him was racial discrimination. *Rachid*, 376 F.3d at 312.[7]

Williams urges the Court to infer pretext from the fact that Williams possessed "manifestly better qualifications" than did the individuals DISD hired. DISD chose Robert Palmer and Larry Oliver to fill the October 2003 and December 2004 Executive Director job openings. According to Williams, neither Palmer nor Oliver were registered engineers and both lacked Williams's lengthy tenure with DISD. The Court, however, does not find that these differences in qualifications are significant enough to justify an inference that DISD's proffered reason for rejecting Williams is pretext for discrimination.

---

[6]Alternatively, Williams argues that DISD's proffered reason for rejecting his application for Executive Director cannot constitute a legitimate, nondiscriminatory rationale because rejecting Williams for voicing his opinions about the management of the 1992 bond program would violate Williams's First Amendment rights. In making this argument, however, Williams mischaracterizes DISD's rationale. DISD did not decline to hire Williams due to his opinions concerning the 1992 bond program. Rather, Williams received a low interview score because he chose to spend crucial interview time criticizing the 1992 bond program instead of answering the questions posed to him or explaining how he could positively contribute to the then-ongoing 2002 bond program.

[7] Williams does not argue mixed motive.

Within the Fifth Circuit, the Court may only infer pretext from disparate qualifications when the disparities are "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280–81 (5th Cir. 1999).[8] The disparities to which Williams points do not meet this standard. Although Williams complains that neither Palmer nor Oliver were registered engineers or had his record of performance at DISD, the record reflects that the position did not require a professional engineer's license or experience with DISD (as opposed to other relevant experience). The October 2003 posting provided that qualified applicants would possess an engineering license, a bachelor's degree in construction, *or* an equivalent combination of education and/or experience in a directly related field. The December 2004 posting clarified that DISD would *prefer* applicants with a professional engineering license, but it did not state that qualified applicants *must* have such a license. Neither notice indicated a preference for applicants who had previously worked for DISD. Both Palmer and Oliver possessed substantial construction- and management-related experience that qualified them for the position; thus, the fact that they lacked an engineering license or performance record with DISD is not highly significant and does not support an inference of

---

[8] Williams asserts that the Supreme Court's opinion in *Ash v. Tyson Foods, Inc.*, 126 S.Ct. 1195 (2006), nullifies the Fifth Circuit's precedent regarding comparative qualifications. The Court disagrees. In *Ash*, the Court repudiated only the Eleventh Circuit's requirement that, to provide sufficient evidence of pretext, "the disparity in qualifications [must be] so apparent as to virtually jump off the page and slap you in the face." *Id.* at 1197. The Court declined to articulate its own standard, but for contrast cited several other presumably appropriate standards articulate in other circuits, one of which is identical to the standard articulated by the Fifth Circuit in *Deines*. *Id.* Thus, the Fifth Circuit's articulation in *Deines* remains binding.

ORDER – PAGE 17

discriminatory intent.  Accordingly, Williams has not shown the pretext sufficient to survive summary judgment based on qualifications.

## IV. CONCLUSION

Williams has failed to raise a prima facie case of discrimination and retaliation in connection with DISD's failure to hire him for the positions of Training Director and Associate Superintendent, as well as with DISD's denial of an annual salary raise in 2003. Additionally, Williams has failed to raise a genuine issue of fact as to whether DISD's proffered reason for not selecting Williams for the position of Executive Director is pretextual.  With respect to his remaining claims, Williams failed to exhaust his administrative remedies.  Accordingly, the Court grants DISD's motion for summary judgment as to all of Williams's claims.

Signed January 10, 2007.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 18